# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JODY D. GRAVEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 C 1695 |
| ) | |
| v. ) | Judge Ronald A. Guzmán |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Jody Gravel seeks judicial review of a final decision of the Commissioner of Social Security that she was not entitled to a period of disability, disability insurance benefits ("DIB") or supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1382c. Plaintiff moves for summary judgment. For the reasons stated below, the motion is granted and the case remanded to the Social Security Administration.

**Facts**

Plaintiff filed applications for SSI and DIB in February 2008 alleging a disability onset date of January 19, 2008. (AR 115-18.)[1] Her applications were denied initially, upon reconsideration, and following a hearing by an administrative law judge ("ALJ"). (*Id*. 20-28, 60-75, 535-45.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id*. 4-6.)

Plaintiff, born in 1970, was 39 years old on the date of the ALJ's decision, October 6, 2009. (*Id*. 28, 96.) She has a high school education and previously worked as a cashier, clerk

---

[1] Citations to "AR" refer to the administrative record in this case.

and delivery person. (*Id*. 101, 105, 107-14.) She contends that she suffers from degenerative disc disease of her lumbar spine, hip osteoarthritis and a right knee impairment, which have severely limited her ability to perform basic activities. (Pl.'s Mot. Summ. J. at 2.) She also asserts that she suffers from uncontrolled diabetes, asthma exacerbations, hypertension, and obesity as well as borderline intellectual function and a depressive disorder. (*Id.*)

The ALJ found that Plaintiff suffered from severe impairments of degenerative disc disease, hip arthritis, and asthma that did not meet or equal a listed impairment. (AR 22, 24.) He further found that Plaintiff could perform light work that did not involve concentrated exposure to noxious fumes, odors respiratory irritants, or extreme temperatures or humidity. (*Id*. 24.) The ALJ then found that Plaintiff could perform her past relevant work as a waitress, call-out clerk, cashier, and telephone delivery person. (*Id*. 27-28.)

**Analysis**

The Social Security Act, 42 U.S.C. § 405(g), authorizes judicial review of the Commissioner's final decision to determine "whether the record as a whole contains substantial evidence" to support that decision and whether the Commissioner committed an error of law. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). Failure to fulfill this obligation is "good cause" to remand the case to develop the record fully. *Id*. at 586. The Court reviews the ALJ's decision *de novo* but gives deference to any factual findings. *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).

2

The Social Security regulations set forth a five-step sequential evaluation process for the ALJ's determination of whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must determine: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant's alleged impairment or combination of impairments is severe; (3) whether any of the claimant's impairments meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.* A finding of disability requires an affirmative answer at either step three or step five, while a negative finding at any step other than step three precludes a finding of disability. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

      A.      <u>Did the ALJ err by not properly considering Plaintiff's mental condition?</u>

The ALJ concluded at step two that Plaintiff had "non-severe medically determinable mental impairments, including depression and borderline intellectual functioning." (AR 22.) According to the ALJ, "the medical evidence of record does not demonstrate more than a minimal limitation in the claimant's ability to perform basic mental work activities" and thus her mental impairments were non-severe. (*Id.* 23.)

Plaintiff's assertion that the ALJ "apparently disregarded" the opinion of the consultative psychologist, Dr. Friedson, is unavailing. The ALJ summarized Dr. Friedson's findings, including that while Plaintiff reported some depression that had been treated with Cymbalta, she had no formal psychiatric history, a psychiatrist or a mental health worker. (*Id..*) The ALJ further noted that Dr. Friedson diagnosed Plaintiff with borderline intellectual functioning and

3

depressive disorder not otherwise specified. (*Id*.) After considering the broad functional areas set out in the regulations for evaluating mental disorders, 20 C.F.R. § 404.1520a(c)(3), the ALJ concluded that "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration," any impairment was non-severe. (*Id*.) The ALJ properly reviewed the relevant evidence regarding Plaintiff's mental condition in determining that she did not have a severe mental impairment.

Although not referred to by the ALJ, Dr. Friedson indicated that Plaintiff had no restrictions responding appropriately to usual work situations and to changes in a routine work setting, mild restrictions interacting appropriately with co-workers and supervisors and moderate restrictions interacting appropriately with the public. Plaintiff contends that regardless whether the mental impairment was severe or not, the ALJ was required but failed to consider these restrictions in determining Plaintiff's functional capacity. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). Because it is does not appear that the ALJ considered the restrictions listed by Dr. Friedson, such consideration must be performed on remand, the reasons for which are detailed below.

> B. <u>Did the ALJ commit reversible error by failing to properly determine at step three whether Plaintiff's condition meets or equals any listed impairment mandating an automatic finding of disability</u>?

While concluding that Plaintiff had severe impairments of degenerative disc disease, arthritis in her hips and asthma, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, which are presumptively disabling. (AR 24.) The ALJ first

4

addressed whether Plaintiff met the requirements of Listing 1.02, a major dysfunction of a joint.

According to the regulations, this category of impairment is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> > B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404 Subpt. P., App. 1, 1.02.

The ALJ found that the medical evidence:

> does not show gross anatomical deformity of a joint with sign of limitation of motion or other abnormal motion of the affected joint, and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint with involvement of one major peripheral weight-bearing joint (hip, knee, or ankle), resulting in inability to ambulate effectively.

(AR 24.) The ALJ then noted that "inability to ambulate effectively is defined as an extreme limitation of the ability to walk" and further stated that "ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of *both* upper extremities." (*Id.*) (emphasis in original.)

Notably absent from the ALJ's opinion is any reference to the medical evidence he considered in making this determination. The ALJ's statements are conclusory and simply restate the relevant definitions without pointing to any record evidence in support. The ALJ's complete lack of discussion of the evidence requires this Court to conclude that he failed to "build an

5

accurate and logical bridge from the evidence to his conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) ("In making h[is] decision, an ALJ must articulate, at some minimum level, h[is] analysis of the evidence.").

Moreover, as noted by Plaintiff, in discussing ineffective ambulation, the regulations go on to provide that "to ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404 Subpt. P. App. 1, 1.00(B)(2). Specific examples cited by the regulations include:

> but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.* In addition to not discussing the evidence that led to his conclusion, the ALJ referred only to the definition of ineffective ambulation "generally" and failed to consider whether Plaintiff met the listing based on the other examples provided. *See Moss v. Astrue*, 555 F.3d 556, 563 (7th Cir. 2009) (concluding that ALJ's determination that plaintiff could effectively ambulate was inadequate because the ALJ failed to consider "whether [the plaintiff] in fact meets the listing based on the provided examples").

Finally, the ALJ failed to mention the impact of Plaintiff's obesity, which is reflected in her body mass index over 30, at times. (AR 350); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("[U]nder S.S.R. 02-1p the ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic").

These issues should be addressed on remand.

C.  Did the ALJ give proper weight to the opinions of the consultative examiner, Dr. Ryan?

After the hearing, the ALJ requested the Agency to arrange for a consultative physical examination, which was performed by Dr. Ryan. Dr. Ryan concluded that Plaintiff was able to lift and carry up to 10 pounds occasionally, sit for one hour, stand for ninety minutes, and walk for 15 minutes. (AR 526-27.) He further concluded that Plaintiff could sit or stand for 4 hours each day and walk for one hour, but only with a cane. (*Id*. 528.) In addition, Dr. Ryan opined that Plaintiff was unable to use foot controls, climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl, but could occasionally climb stairs. (*Id*. 528-29.) Finally, Dr. Ryan stated that Plaintiff could not tolerate exposure to unprotected heights, moving mechanical parts, dust, odor, fumes, and pulmonary irritants, or extreme heat or cold. (*Id*. 530.) Dr. Ryan found, however, that Plaintiff could shop, travel without assistance, ambulate independently, prepare meals, care for personal hygiene and sort and handle files. (*Id*. 531.)

The ALJ found that "these limitations do not adequately reflect the medical evidence of record, including Dr. Ryan's own clinical observations." (*Id*. 26.) The ALJ further stated that "Dr. Ryan did not identify particular findings supporting the restrictions listed" and that "[t]he functional limitations identified by Dr. Ryan are not supported by his observations regarding limited range of motion and tenderness in the lower back and right knee and hip." (*Id*.) According to the ALJ, Dr. Ryan simply "adopted the claimant's subjective statements regarding her ability to sit, stand, and walk, as he opined that the claimant had limitations in these areas identical or nearly identical to those identified by the claimant." (*Id*.) Therefore, the ALJ gave "limited weight" to his opinions. (*Id*.)

Plaintiff contends that the ALJ rejected Dr. Ryan's conclusions without providing factual

7

or legal support. Dr. Ryan observed that:

> the claimant's left hip . . . could only flex to 80 degrees. She also was limited in internal rotation to 0 degrees. The claimant's right knee was limited in flexion to 60 degrees with some reproducible tenderness. Gait was antalgic [i.e., accommodates pain]. She was able to walk over 50 feet without the use of her cane. The claimant had some mild difficulty with toe walk and getting on and off the examination table; severe difficulty with tandem gait; and unable whatsoever to do heel walking or squat and rise.

(*Id*. 524.) Dr. Ryan also found that her left hip flexion was limited to 80 degrees (out of 100), her right knee could only flex to 80 degrees (out of 150), her lumbar flexion was limited to 70 degrees (out of 90), and her left and right lateral bending was limited to 15 degrees (out of 25). (*Id*. 515-16.)

It is unclear how these medical findings could not lead to the limitations Dr. Ryan identified, including that Plaintiff was able to lift and carry up to 10 pounds occasionally, sit for one hour, stand for ninety minutes, walk for 15 minutes, sit or stand for 4 hours each day and walk for one hour, but only with a cane, and was unable to use foot controls, climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl, but could occasionally climb stairs. Because the ALJ did not detail how the functional limitations identified by Dr. Ryan are not supported by his medical observations, the Court is unable to assess the propriety of the determination.

On remand, the ALJ must specify why he gave only limited weight to Dr. Ryan's opinions. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (indicating that an ALJ must "build the requisite 'logical bridge' between the evidence and [his] conclusion").

E. <u>Did the ALJ improperly base his credibility finding with respect to Plaintiff on the objective medical evidence and her activities</u>?

Plaintiff next challenges the ALJ's determination that she was not credible. An ALJ's credibility determination receives substantial deference on review unless it is patently wrong and

8

not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). An ALJ's credibility determination "'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting SSR 96-7p).

With respect to Plaintiff's credibility, the ALJ concluded that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 25.) The Seventh Circuit recently referred to this same language as "meaningless boilerplate" and strongly criticized its use, noting that the government's lawyer admitted at oral argument that he did not know what it meant and suggesting that the Social Security Administration "take a close look at the utility and intelligibility of its 'templates.'" *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012).

The government contends that "the ALJ specifically indicated that he considered Plaintiff's complaints pursuant to the factors in Social Security Rulings 96-4p and 96-7p, as well as 20 C.F.R. § § 404.1529 and 416.929." (Def.'s Resp., Dkt. # 27, at 14.) That may be true, but the statement still fails to provide any "specific reasons" for the ALJ's findings on credibility. In addition, the government notes that the ALJ "discussed Plaintiff's medical treatment, noting her medications and other measures to alleviate pain utilized by Plaintiff." (*Id.*) Again, however, the ALJ's lengthy summary of the medical evidence does not provide specific reasons why he found Plaintiff

not credible. The Court may be able to *infer* the reasons, but it is not the Court's role to pore through Plaintiff's testimony and decide how it does or does not reconcile with her medical treatment.

The only portion of the ALJ's order that expressly compares Plaintiff's testimony with other record evidence is the paragraph in which the ALJ discusses Plaintiff's activities of daily living and work history. (AR 27.) The ALJ states that "[t]he fact that the impairments did not prevent her from working – and the fact that she wanted to work more rather than less – strongly suggests that they would not currently prevent work." (*Id*.) Plaintiff, however, correctly notes that the Seventh Circuit has indicated that "employment is not proof positive of ability to work," *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998), and that "desperate financial straits" could play a role in a claimant's pursuit of employment. *Schmidt v. Barnhart*, 395 F.3d 737 (7th Cir. 2005). During the hearing before the ALJ, Plaintiff's lawyer indicated that Plaintiff was receiving insurance through her public aid card and Plaintiff testified when asked how her work as waitress was going that it was "[p]ainful, but you know, I had to go, I had to do something. I had to go back to work to do something to get, to make money." (AR 582, 586.) The ALJ's opinion does not contain any mention of Plaintiff's financial situation in his determination that the impairments did not prevent her from working because she had worked in the past and sought more work. On remand, the ALJ's assessment regarding Plaintiff's ability to work shall address the reasons that Plaintiff has worked in the past and her desire for more hours.

As to her daily living activities, the ALJ notes that in a Function Report that Plaintiff filled out for the Social Security Administration, she stated that "she prepares meals, does housework, including laundry and vacuuming, independently performs personal care, takes care of her husband

and children, drives, shops for household items and food, and socializes with friends." (*Id*. 27) (citing AR 129-34). Based on these statements, the ALJ concluded that "[t]his broad spectrum of daily activities indicates that claimant is functioning at a higher level than generally alleged, and thus leads to the conclusion that claimant is only partially credible regarding limitations imposed by her allegedly disabling impairments." (*Id*.) An ALJ may appropriately consider a claimant's daily activities when assessing the claimant's symptoms. *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008). However, "[w]e have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). *See also Villano,* 556 F.3d at 563 ("limited" daily activities such as housework, shopping, driving short distances, walking the dog and playing with grandchildren "do not contradict a claim of disabling pain").

This is particularly true here where the Function Report cited by the ALJ in assessing Plaintiff's daily activities contains qualifications not cited by the ALJ. For example, while Plaintiff states that she prepares breakfast for her daughter, she indicates that she lays down before and after making her daughter something "quick" for breakfast. (AR 129.) Moreover, she states in the report that her then 15 year-old son prepares "a lot" of the meals and that she prepares meals one to two days a week. (*Id*. 131.) Thus, while the report indicates Plaintiff engages in meal preparation, it is more limited than the ALJ's opinion implies. Further, in response to the question "for whom do you care and what do you do for them," she answers, "I take care of my husband and kids." (AR 130.) She does not explain how she takes care of them and in response to the next two questions, indicates that her children take care of the pets and that "my 15 yr. old son does a lot of the work around the house." (*Id*.) In addition, the ALJ fails to mention that Plaintiff states

11

that she "can't get up to play with [her] kids, because it would hurt my back alot," and in response to the question "[i]f you don't do house or yard work, explain why not," she responds, "[m]y back and hips hurt too much when I stand & sit for long and short periods of time." (*Id*. 132.) As to her socializing, she states, "I don't go out as much. I stay home a lot." (*Id*. 134.)

Moreover, when questioned by the ALJ at the hearing, Plaintiff testified as follows:

> Q: Okay. Any kids at home?
> A: I have three.
> Q: Sixteen, 11 and five. My 16-year-old does a lot of the housework and everything around the house. He's got the weight of the world on his shoulders.
> . . .
> Q: . . . Do you drive?
> A: No. I try not to.
> Q: I mean, do you drive sometimes, when you gotta - - -
> A: To pick up my son from school, that's about it. And then he does the driving.
> . . .
> Q: Now do you cook?
> A: Nope.
> Q: You don't cook at all.
> A: My 16-year-old does.
> Q: You don't cook at all?
> A: Every once in a great while.
> . . .
> Q: You do the laundry?
> A: No, I fold it.
> . . .
> Q: Do you do cleaning around the house?
> A: No sir.

(*Id*. 586-89.) In addition, she testified that when she goes shopping, her husband drives, she uses a mobility scooter in the store and she does not bring the groceries into the house. (*Id*. 589.) The ALJ did not discuss the hearing testimony or explain why he completely disregarded it.

The ALJ cannot cherry-pick parts of Plaintiff's testimony and disregard others without

12

explanation. On remand, Plaintiff's qualifications regarding her ability to engage in daily activities should be taken into account in the ALJ's residual functions capacity assessment. *Craft*, 539 F.3d 668 ("Unless the ALJ properly finds [claimant's] testimony to be incredible on remand, any [qualifying] testimony about how [he] copes with his daily activities should be considered in the RFC assessment.").

**Conclusion**

For the reasons set forth above, Plaintiff's motion for summary judgment is granted [Dkt.# 22]. The decision of the Commissioner of Social Security is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order. Civil case terminated.

**Date:** December 21, 2012

_____

**Ronald A. Guzman**
**United States District Judge**